# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| JOENDEL HERNANDEZ, ET AL.<br>Plaintiffs | CIVIL ACTION |
|---|---|
| VERSUS | NO. 16-3621<br>c/w 17-46 |
| DEDICATED TCS, L.L.C., ET AL.<br>Defendants | SECTION: "E"(5) |

*Applies to*: **BOTH CASES**

## ORDER AND REASONS

Before the Court is a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Bulk Resources/Louisiana, LLC ("Bulk Louisiana") and Bulk Resources, Inc. ("Bulk Inc.") requesting that this Court dismiss the claims brought against them by Plaintiffs, Joendel Hernandez and Anthony Duckworth (the "Hernandez Plaintiffs").[1] The Hernandez Plaintiffs oppose this motion.[2]

Also before the Court is a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Bulk Inc. requesting that this Court dismiss the claims brought against it by Plaintiffs, Demond Stack, Armond Burnett, Iesha Burnett, Pamela Burnett, Nakita Stack, and Shenita Stack, individually and on behalf of the Estate of Armond Stack ("Stack Plaintiffs.").[3] The Stack Plaintiffs oppose this motion.[4]

For the following reasons, the pending motions to dismiss are **GRANTED IN PART** and **DENIED IN PART**.

---

[1] R. Doc. 87.
[2] R. Doc. 89. As discussed in greater detail below, the Hernandez Plaintiffs did not address the arguments raised by Bulk Louisiana in the motion to dismiss. *See id.*
[3] R. Doc. 93.
[4] R. Doc. 96.

1

## BACKGROUND

On November 1, 2008, Bulk Inc. and Dedicated TCS, L.L.C. (referred to as "DTCS" or "Dedicated") entered into an Operating Agreement whereby DTCS agreed to operate Bulk Inc.'s facility at the Port of New Orleans.[5] On May 1, 2010, Arkema, Inc. ("Arkema") and Bulk Inc. entered into a Transloading Agreement whereby Bulk Inc. agreed to, among other services, clean Arkema's tank cars.[6]

On April 22, 2016, the Hernandez Plaintiffs filed their complaint against DTCS and Arkema.[7] On March 8, 2017, the Court granted the Hernandez Plaintiffs' motion for leave to file an amended complaint naming Bulk Louisiana and Bulk Inc. as additional defendants.[8] On October 6, 2016, the Stack Plaintiffs filed their initial complaint against DTCS, RST Insurance Company, Bulk Louisiana, UVW Insurance Company, Arkema, Inc. and XYZ Insurance Company in the Civil District Court for the Parish of Orleans, State of Louisiana.[9] DTCS filed a notice of removal in this district.[10] On April 4, 2017, the Court granted DTCS' *ex parte* motion to consolidate the Hernandez and Stack Plaintiffs' actions.[11] On April 11, 2017, the Stack Plaintiffs filed their First Supplemental and Amended Complaint.[12]

---

[5] *See* R. Doc. 81-1. The Stack Plaintiffs attached a copy of the Operating Agreement and Transloading Agreement to their First Supplemental and Amended Complaint. *See id.* The Hernandez Plaintiffs did not attach a copy of the Operating Agreement or Transloading Agreement to their Complaint, First Supplemental and Amending Complaint, or Second Supplemental and Amending Complaint. The Court finds that it may also consider materials outside the Hernandez Plaintiffs' complaint in deciding their motion, including the Operating Agreement and the Transloading Agreement, as the Hernandez Plaintiffs' factual allegations explicitly reference Bulk Inc.'s contracts with Arkema and DTCS. *See e.g., Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (citations omitted).
[6] R. Doc. 81-2.
[7] R. Doc. 1.
[8] R. Doc. 60.
[9] Case No. 17-cv-46, R. Doc. 1.
[10] *Id.*
[11] R. Doc. 72.
[12] R. Doc. 81.

The consolidated actions arise out of an incident occurring on or about October 8, 2015. On that date, Joendel Hernandez, Anthony Duckworth and Armond Stack, employees of DTCS, were assigned to clean an Arkema tank car at the facility operated by DTCS at the Port of New Orleans. Plaintiffs allege that, although the tank car to be cleaned contained hazardous and toxic chemical vapors, they were ordered to enter the tank car without the protective equipment needed to ensure their ability to breathe. The Plaintiffs allege they all immediately lost consciousness, and that Armond Stack eventually lost his life, as a direct result of their exposure to hazardous vapors and their lack of oxygen in the tank car.

The Hernandez and Stack Plaintiffs' claims against Bulk Inc. sound in tort. The claims alleged by the Hernandez and Stack Plaintiffs fall under three distinct theories of tort liability: (1) Bulk Inc. voluntarily and contractually assumed a duty to provide a safe and OSHA-compliant working environment to the Plaintiffs by entering into the Transloading Agreement with Arkema, and Bulk Inc. negligently breached this duty[13]; (2) Bulk Inc. was negligent in failing to m0nitor and supervise the work being performed by DTCS under a theory of premises liability[14]; and (3) Bulk Inc. was negligent in hiring DTCS, an entity that it knew was not responsible and that had a known record of safety violations.[15]

---

[13] R. Doc. 61 at 3; R. Doc. 81 at 17.
[14] R. Doc. 61 at 3; R. Doc. 81 at 6; Case No. 17-46 R. Doc. 1-8 at 6.
[15] R. Doc. 61 at 3; R. Doc. 81 at 17-18; Case No. 17-46 R. Doc. 1-8 at 6. Although the Stack Plaintiffs also alleged that Armond Stack "was a third-party beneficiary of the obligations assumed by Bulk to provide a safe working environment under both the Operating and Transloading Agreements," in their response to Bulk Inc.'s Motion to Dismiss, the Stack Plaintiffs state, "The Contracts discussed above serve the basis for *tort* liability against Bulk *rather than contractual liability* under a 'stipulation pour autrui.'" *See* R. Doc. 96 at 5 (referencing R. Doc. 81 at 18) (emphasis added).

# **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[16] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[17] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[19] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[20]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[21] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[22] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[23]

---

[16] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[18] *Id.*
[19] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[20] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[21] *Twombly*, 550 U.S. at 555.
[22] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).
[23] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).

# LAW AND ANALYSIS

I. <u>The Hernandez Plaintiffs' Claims Against Bulk Louisiana</u>

On March 8, 2017, the Hernandez Plaintiffs filed their Second Supplemental and Amending Complaint naming Bulk Louisiana and Bulk Inc. as additional defendants.[24] On May 8, 2017, Bulk Louisiana and Bulk Inc. filed their motion to dismiss the claims brought by the Hernandez Plaintiffs.[25] In the motion to dismiss, Bulk Louisiana argues the claims against it should be dismissed because it has no connection to the incident at issue.[26] Although the Hernandez Plaintiffs filed a response in opposition to the motion to dismiss filed by Bulk Inc. and Bulk Louisiana, the Hernandez Plaintiffs did not address the arguments raised by Bulk Louisiana.[27]

Bulk Louisiana's Motion to Dismiss the claims raised against it by the Hernandez Plaintiffs is granted.

II. <u>Whether the Plaintiffs Stated a Claim that Bulk Inc. Assumed a Duty to Provide Safe Working Conditions and Breached that Duty</u>

The Hernandez and Stack Plaintiffs argue they have sufficiently alleged a claim against Bulk Inc. for voluntarily assuming the duty to provide safe working conditions for DTCS' employees working at the port location and then negligently breaching that duty.[28] The Plaintiffs point to their allegations that Bulk Inc. contractually assumed certain duties when it entered into the Transloading Agreement with Arkema;[29] that Bulk Inc. represented in the Transloading Agreement that it had "all necessary knowledge, skill and

---

[24] R. Doc. 61.
[25] R. Doc. 87.
[26] *Id.* at 1.
[27] *See* R. Doc. 89. The Court also notes that in *Stack*, after the Court granted the Plaintiffs leave to conduct jurisdictional discovery, the Stack Plaintiffs filed an amended complaint in which the Plaintiffs removed Bulk Louisiana as a named defendant. *See* R. Doc. 81.
[28] R. Doc. 61 at 2-3; R. Doc. 81 at 4.
[29] R. Doc. 61 at 2-3; R. Doc. 81 at 4.

5

expertise to handle" Arkema's materials;[30] and that, under the Transloading Agreement, Bulk Inc. was required to "take every reasonable precaution to minimize any hazard while performing Services" under the Agreement, to "notify its employees of all hazards associated with materials [handled under the Agreement] and protect its employees from any hazards", and to "provide to all employees **and contractors** working in or around the Facility sufficient training for the employees **and contractors** to carry out their duties in a safe and responsible manner . . ."[31]

"[U]nder Louisiana jurisprudence, parties who voluntarily assume certain duties for workplace safety must perform those duties in a reasonable and prudent manner."[32] "Louisiana courts have long held that where a person voluntarily undertakes to perform a task, he thereby assumes the duty to exercise reasonable care in performance of that task and may be held liable for damage caused by the breach of that duty, even though he may have had no prior obligation to perform the task."[33] "Though the law may impose no duty to act, once a person undertakes to act, he must do so with reasonable care."[34]

Louisiana courts apply Section 324A of the Restatement (Second) of Torts to determine liability to a third person for negligent performance of an undertaking.[35] Section 324A of the Restatement (Second) of Torts provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical

---

[30] R. Doc. 81 at 4. *See also* R. Doc. 96 at 7-8.
[31] R. Doc. 81 at 4. *See also* R. Doc. 61 at 2-3; R. Doc. 96 at 8 (citing R. Doc. 81-2 at ¶ 9.2) (emphasis added by Plaintiffs); R. Doc. 89 at 3-4 (citing R. Doc. 61).
[32] *Bujol v. Entergy Servs., Inc.*, 2003-0492 (La. 5/25/04), 922 So. 2d 1113, 1129, adhered to on reh'g (Jan. 19, 2006).
[33] *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 838 F. Supp. 2d 497, 513 (E.D. La. 2012) (citing *LeBlanc v. Stevenson*, 770 So. 2d 766, 770-71 (La. 2000)).
[34] *Id.*
[35] *Bujol*, 922 So. 2d at 1129 (citing *Tillman v. Travelers Indemnity Co.*, 506 F.2d 917 (5th Cir. 1975)). *See also Mundy v. Dep't of Health & Human Res.*, 620 So. 2d 811 (La. 1993); *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So. 2d 1364 (La. 1984).

>    harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
>> (a) his failure to exercise reasonable care increases the risk of such harm, or
>>
>> (b) he has undertaken to perform a duty owed by the other to the third person, or
>>
>> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking[36]

"[B]ecause such cases involve the imposition of liability where the law imposes no duty, the critical threshold question in any such case is whether the defendant affirmatively undertook to perform the task or services at issue."[37] In its notes to Section 324A of the Restatement (Second) of Torts, the American Law Institute takes no position as to whether "the making of a contract or a gratuitous promise, without in any way entering upon performance, is a sufficient undertaking to result in liability under the rule stated in this Section."[38] In this case, the Plaintiffs allege that Bulk Inc. entered into a Transloading Agreement with Arkema whereby Bulk Inc. voluntarily assumed certain duties, but the Plaintiffs do not allege that Bulk Inc. ever undertook to perform these duties. Bulk Inc. may be entitled to dismissal on this basis alone. Even giving the Plaintiffs the benefit of

---

[36] Restatement (Second) of Torts § 324A (Am Law Inst. 1965).
[37] *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 838 F. Supp. 2d at 513-14 (citing *Bujol*, 922 So. 2d at 1130-38).
[38] Restatement (Second) of Torts § 324A (Am Law Inst. 1965). The Court notes, however, that in *Bujol*, the Louisiana Supreme Court explained, "In determining whether a parent corporation affirmatively undertook the duty of safety owed by its subsidiary, courts have looked to the scope of the parent's involvement, the extent of the parent's authority, and the underlying intent of the parent to determine whether the parent corporation affirmatively undertook the duty owed by the subsidiary." *Bujol*, 922 So. 2d at 1131 (citations omitted. Quoting the First Circuit's opinion in *Muniz v. National Can Corporation*, the Louisiana Supreme Court explained, "Because an employer has a non-delegable duty to provide safe working conditions for its employees, we do not lightly assume that a parent corporation has agreed to accept this responsibility. Neither mere concern nor minimal contact about safety matters creates a duty to ensure a safe working environment for employees of a subsidiary. To establish such a duty, the subsidiary's employee must show some proof of a *positive* undertaking by the parent corporation." *Id.* (quoting *Muniz*, 737 F.2d 145, 148 (1st Cir. 1984). The Louisiana Supreme Court did add, however, that "[s]uch an undertaking may be express, as by contract between the parent and the subsidiary, or it may be implicit in the conduct of the parent." *Id.* at 1132.

the doubt and assuming the allegation that Bulk Inc. entered into a contractual agreement with Arkema, without any allegation that Bulk, Inc. undertook performance, is sufficient to establish an undertaking, the Plaintiffs have not sufficiently alleged a claim that Bulk Inc. assumed a duty owed to them.

To satisfy Section 324A, the Plaintiffs must allege that (a) Bulk Inc.'s failure to exercise reasonable care increased the risk of harm to them; or (b) that Bulk Inc. undertook to perform a duty owed by the other, Arkema, to third persons, the injured employees; or (c) they suffered harm because they or DTCS relied upon Bulk Inc.'s undertaking.[39] The Plaintiffs do not allege that Sections 324A(a) or 324A(c) apply. The only scenario the Plaintiffs possibly allege is under Section 324A(b) – that Bulk Inc. has undertaken to perform a duty owed to them by Arkema.

In *Bujol*, the Louisiana Supreme Court explained that an undertaking under Section 324A(b):

> [I[s a more stringent requirement than the 'positive undertaking' requirement of the introductory paragraph [of § 324A]. The majority of cases that have held that a parent, or other entity, will only be liable for a voluntary assumption of duty under § 324A(b) where that corporation's undertaking was intended to supplant, not just supplement, the subsidiary's duty.[40]

The Plaintiffs have not alleged Arkema had a duty to them. Neither have they alleged that Bulk Inc. assumed any duty owed to them by Arkema. Most importantly, they have not alleged that any undertaking by Bulk Inc. was intended to supplant, not just supplement, DTCS' duty to provide a safe work environment to its employees.

---

[39] *See* Restatement (Second) of Torts § 324A (Am Law Inst. 1965). In *Bujol*, the Louisiana Supreme Court restated the three subparts of Section 324A as: "(a) the defendant's failure to exercise reasonable care increase the risk of such harm; or (b) the defendant has undertaken to perform a duty owed by the employer to the injured employee; or (c) harm is suffered because of reliance of the employer or the injured employee upon the undertaking." *See Bujol*, 922 So. 2d at 1130-31 (citing *Tillman v. Travelers Indemnity Co.*, 506 F.2d 917 (5th Cir. 1975)).

[40] *Id.* (collecting cases).

8

The Plaintiffs have not sufficiently alleged a tort claim against Bulk Inc. under the theory that Bulk Inc. assumed a duty to provide a safe work place for DTCS' employees.

III. <u>Whether the Plaintiffs Have Alleged a Viable Claim Against Bulk Inc. for Premises Liability</u>

Bulk Inc. moves to dismiss this claim because the Plaintiffs did not sufficiently allege a valid claim against Bulk Inc. as the owner of the premises where the accident occurred.[41]

The Stack Plaintiffs allege that under the Operating Agreement with DTCS, Bulk Inc. "retained the right to inspect the Facility to determine DEDICATED's compliance with the Environmental Laws."[42] The Stack Plaintiffs also allege that under the Transloading Agreement with Arkema, Bulk Inc. acknowledged "that it is solely responsible for and in control of operations at its Facility as well as the railcars and trucks utilized for the transport of the Materials."[43] Based on these allegations, the Stack Plaintiffs contend they have alleged facts sufficient to show that Bulk Inc. maintained enough control over the port property to render Bulk Inc. liable under a theory of premises liability.

The Louisiana Civil Code provides responsibility for damage caused by things in one's custody.[44] This is to be understood with the following modification:

> [T]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew, or in the exercise of reasonable care, should have known of the ruin, vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.[45]

---

[41] R. Doc. 87-1 at 6; R. Doc. 93-1 at 4.
[42] R. Doc. 81 at 3 (citing 81-1 at § 9C).
[43] *Id.* at 4.
[44] La. Civ. Code. art. 2317.
[45] La. Civ. Code. art. 2317.1.

"Thus, the plaintiff must prove three elements: 1) the defendant either owned or had care, custody or control of the thing in question; 2) the thing was a cause-in-fact of the plaintiff's injuries; and 3) the thing presented an unreasonable risk of harm."[46]

The first issue the Court will address is whether the Plaintiffs have alleged that Bulk Inc. had custody or *garde* over the port location. The Plaintiffs allege that "[a]t the time of the incident at issue, [Bulk Inc.] had a lease on land owned by the Board of Commissioners of the Port of New Orleans at the location where the subject incident occurred."[47] The Plaintiffs further allege that Bulk Inc. "entered into an Operating Agreement with its affiliate, DEDICATED, [for DTCS] to 'independently operate'" the port location.[48] "Although there is a presumption that an owner has custody or *garde* of its property, this presumption is rebuttable. One way to rebut the presumption is by establishing a contractual undertaking by another to maintain and control the property."[49] Louisiana Courts have held that when the property owner has delegated supervision and control over the property to an independent contractor, the owner retains no legal duty to provide a safe workplace for workers on the property.[50] "In determining direction or control over the premises, and hence custody or *garde*, the courts have looked to whether a defendant possesses the ability to access the premises at will and whether the defendant has the ability to alter the premises."[51]

Bulk Inc. points to its Operating Agreement with DTCS in which DTCS agreed to operate a tank cleaning business on the premises Bulk Inc. leased from the port.[52] The

---

[46] *Graubarth*, 970 So. 2d at 664 (citations omitted).
[47] R. Doc. 81 at 2.
[48] *Id.* at 3.
[49] *Davis v. Riverside Court Condo. Ass'n Phase II, Inc.*, 2014-0023 (La. App. 4 Cir. 11/12/14), 154 So. 3d 643, 648 (quoting *Gallina v. Hero Lands Co.*, 03-3331 (La. App. 4 Cir. 10/7/03), 859 So. 2d 758, 762).
[50] *See Nguyen*, 20 So. 3d at 553-54 (citing *Buras v. Lirette*, 97-1255 (La.App. 3 Cir. 12/23/97), 74 So. 2d 980).
[51] *Graubarth*, 970 So. 2d at 664.
[52] R. Doc. 87-1 at 7 (citing R. Doc. 87-2).

Operating Agreement between Bulk Inc. and DTCS provided that DTCS, *not* Bulk Inc., had control and custody of the premises throughout the term.[53] The Operating Agreement specifically included the following terms: (1) "Operator [DTCS] desires to independently operate an industrial tank trailer wash facility at Bulk's facility"[54]; (2) "Operator shall, at all times, keep the Facility in a neat, clean, and orderly condition"[55]; (3) "Operator shall perform all maintenance and repair, including, without limitation, sweeping, snow removal, trash removal, replacing light bulbs, clearing closed drains"[56]; (4) "Operator covenants and agrees that, at the expiration [of] the agreement, it shall quit and surrender the Facility with all the improvements thereon in as good a state and condition as the same were at the Commencement Date"[57]; (5) "Bulk, its contractors, invitees, and their respective employees shall have the right of access to the Facility to determine the state of maintenance and repair. Bulk shall schedule such access, to the extent reasonably possible, so as not to materially interfere with Operator's operation of the facility"[58]; (6) "Bulk had the right to inspect the facility, but only upon three business days written notice to Dedicated to determine compliance with applicable environmental laws"[59]; (7) "Operator shall conduct its activities on the Facility in material compliance with all applicable statutes, ordinances, regulations, orders and requirements of any governmental authority, agency, or instrumentality"[60]; (8) "Operator shall have the right to paint, install light or decorations, or install signs . . . on or about the Facility or any part thereof"[61]; (9) "Operator shall be liable for all taxes levied or assessed against personal

---

[53] *See* R. Doc. 87-2.
[54] *Id.* at 1.
[55] *Id.* at § 4A.
[56] *Id.*
[57] *Id.* at § 4B.
[58] *Id.* at § 4D.
[59] *Id.* at § 9C.
[60] *Id.* at § 6A.
[61] *Id.* at § 8A.

11

property, furniture or fixtures placed by Operator in the Facility"[62]; (10) At the expiration of the Operating Agreement, Dedicated had the responsibility to 'surrender' the premises to Bulk Inc.[63] Bulk Inc. argues these provisions establish that DTCS, and not Bulk Inc., had custody and control of the premises.

The Stack Plaintiffs respond by alleging that, under the Operating Agreement, Bulk Inc. retained the right to inspect the Facility to determine DTCS' compliance with environmental laws.[64] The Stack Plaintiffs cite *Moore v. Safeway, Inc.* to support their argument, but the defendant in *Moore* undertook to perform its contractual right to conduct safety inspections of the jobsite on its property where the Plaintiffs were injured.[65] The Stack Plaintiffs do not allege Bulk Inc. undertook to perform its contractual right to conduct safety inspections in their complaint. Instead, the Stack Plaintiffs allege Bulk Inc. was negligent in "failing to inspect the Facility at which DEDICATED was performing operations to ensure that it was complying with all applicable Environmental Laws, including OSHA."[66]

Even if the Stack Plaintiffs had alleged Bulk Inc. undertook the performance of its contractual right to conduct safety inspections, the Plaintiffs would still not have sufficiently alleged that Bulk Inc. retained custody or *garde* over the port location. In determining direction or control over the premises and hence custody or *garde*, the courts have looked to whether a defendant possesses the ability to access the premises at will and whether a defendant has the ability to alter the premises."[67] Louisiana courts have held that where there is only a "limited ability to inspect the premises [and] a limited

---

[62] *Id.* at § 10A.
[63] *Id.* at § 13A.
[64] R. Doc. 81 at 3 (citing R. Doc. 81-1 at § 9.C).
[65] *Id.* at 10 (citing *Moore v. Safeway, Inc.*, 95-1552 (La. App. 1 Cir. 11/22/96), 700 So. 2d 831, 846).
[66] R. Doc. 81 at 6.
[67] *Graubarth*, 970 So. 2d at 664.

12

access to enter the premises," the premises owner or lessor is not liable for activities on the premises.[68] "In order to allege that Bulk Inc., irrespective of its agreement to sublease the property to DTCS, retained custody or *garde* over the port location, the Plaintiffs would have had to allege that Bulk Inc. retained more than just a limited ability to inspect and access the premises and the Plaintiffs have not done so.

The Plaintiffs have not sufficiently alleged a tort claim for premises liability against Bulk Inc.

IV. <u>Whether the Hernandez and Stack Plaintiffs Have Stated a Viable Claim that Bulk Inc. was Negligent in Hiring or Entering a Subcontract With DTCS</u>

"Louisiana law imposes a separate duty on principals to exercise reasonable care in selecting or hiring an independent contractor."[69] Louisiana courts have explained that "[o]ne who hires an irresponsible independent contractor may be independently liable."[70] A principal breaches "this duty if it knew or should have known that [the independent contractor] was irresponsible."[71]

The Hernandez and Stack Plaintiffs allege Bulk Inc. was negligent in contracting with their employer, DTCS.[72] The Hernandez Plaintiffs specifically allege Bulk Inc. was negligent in contracting with DTCS because DTCS has a known record of safety

---

[68] *Graubarth*, 970 So. 2d at 664-65. *See also Bethea v. Great Atl. & Pac. Tea Co.*, 2007-1385, (La. App. 4 Cir. 9/30/09), 22 So. 3d 1114, 1116 (citing *Chaplain v. American Empire Surplus Lines Ins. Co.*, 98-1372 (La. App. 4 Cir. 3/31/99), 731 So. 2d 973).
[69] *Bourg v. BT Operating Co.*, 2009 WL 960011, at *9 (S.D. Tex. Apr. 8, 2009) (citing *Hemphill v. State Farm Ins. Co.*, 472 So. 2d 320, 324 (*Hemphill v. State Farm Ins. Co.*, 472 So. 2d 320 (La.App. 3 Cir. 1985). *See also Evans v. Allstate Ins. Co.*, 194 So. 2d 762 (La.App. 1 Cir. 1967); *Dragna v. KLLm Transp. Servs., L.L.C.*, 638 F. App'x 314 (5th Cir. 2016); *Schram v. Colony Specialty Ins. Co.*, 2016-598, 2016 WL 7475827 (La.App. 3 Cir. 12/29/16) (unpublished); *Guillory v. Conoco, Cont'l Oil Co.*, 521 So. 2d 1220 (La. Ct. App.), *writ denied sub nom. Guillory v. Conoco, Inc.*, 526 So. 2d 801 (La. 1988); *Perkins v. Gregory Mfg. Co.*, 95-01396 (La. App. 3 Cir. 3/20/96), 671 So. 2d 1036, *writ denied*, 96-0971 (La. 5/31/96), 673 So. 2d 1039.
[70] *Bourg*, 2009 WL 960011, at *9 (quoting *Hemphill*, 472 So. 2d at 324).
[71] *See id* at *10 (citing *Hemphill*, 472 So. 2d at 324). The Court acknowledges that it is not clear whether actual knowledge is required in Louisiana to support a negligent hiring claim. *See Dragna*, 638 F. App'x at 319 (citations omitted).
[72] R. Doc. 61; R. Doc. 81; Case No. 17-46 R. Doc. 1-8.

13

violations.[73] The Stack Plaintiffs specifically allege Bulk Inc. negligently contracted with DTCS to provide tank cleaning services when it was aware of DTCS' record of safety violations prior to the subject incident.[74]

Ordinarily, a case filed under this theory of tort liability would involve a claim filed by an injured unrelated third party against a principal who hired an irresponsible contractor who is not the plaintiff's employer. In deciding whether this theory of recovery has been sufficiently alleged in this case, the Court must determine whether the employees of the irresponsible contractor, DTCS, have a viable claim against Bulk Inc. for negligently contracting with their direct employer. A review of the limited case law regarding a principal's independent duty to exercise reasonable care in selecting or hiring an independent contractor convinces the Court that the employees of the irresponsible independent contractor may bring such a cause of action against the principal. Rather than focusing on whether the irresponsible contractor is the employer of the plaintiff, Louisiana courts have focused on the principal's knowledge of the subcontractor's irresponsibility at the time of hiring.[75]

In *Perkins v. Gregory Manufacturing Co.*, the plaintiff, Larry Wayne Perkins, sued Boise Southern Corporation ("Boise") on a claim that Boise negligently hired Kim Johnson Trucking Company to harvest timber on one of its properties.[76] As the Louisiana Third Circuit Court of Appeals explained, "Kim Johnson Trucking then either contracted with or hired George Davis to supply the saws and tree trimmers. Davis hired Perkins as a tree trimmer."[77] A few hours after the commencement of the timber harvesting

---

[73] R. Doc. 61 at 3.
[74] R. Doc. 81 at 5.
[75] *See e.g. Guillory*, 521 So. 2d at 1225.
[76] *Perkins*, 671 So. 2d at 1037.
[77] *Id.*

14

operation, a tree fell on Perkins.[78] The *Perkins* court considered whether Boise was independently negligent for the hiring of Kim Johnson Trucking.[79] The *Perkins* court affirmed the trial court's ruling granting Boise's motion for summary judgment because "[t]here is no evidence in the record to demonstrate negligent hiring practices on the part of Boise."[80] Although summary judgment was granted, the court did not rule out the possibility of a claim for negligent selection or hiring by the employee of the irresponsible contractor.[81]

      Similarly, in *Guillory v. Conoco, Inc., Continental Oil Co.*, the plaintiff, Charles Guillory, sued Conoco Inc. ("Conoco") on a claim that Conoco negligently hired a general contractor, Daniel Construction Company.[82] The *Guillory* court explained that Conoco contracted with Daniel Construction Company to build a new unit on Conoco's land to refine "sour crude."[83] Daniel Construction Company then contracted out some of the specialty work to subcontractors, including the plaintiff's employer, Morgan Roofing Company, which installed roofing materials on five large oil storage tanks.[84] As explained by the court, "Morgan's employees worked on top of the tanks, over 40 feet high, without any type of fall protection, in violation of OSHA and Conoco safety rules, which Daniel [Construction Company] had contractually agreed to follow."[85] The Louisiana Third Circuit Court of Appeals affirmed the trial court's decision not to instruct the jury regarding Conoco's liability for negligently hiring Daniel Construction Company. The court reasoned there was "no evidence that Conoco knew, at the time it hired Daniel

---

[78] *Id.*
[79] *Id.*
[80] *Id.*
[81] *Id.* The *Perkins* court ultimately held that Boise, the principal, did not owe a duty to protect the contractor's own employees from risks inherent to the job.
[82] *Guillory*, 521 So. 2d at 1222.
[83] *Id.*
[84] *Id.*
[85] *Id.*

15

Construction Company, that Daniel was irresponsible. Any negligent conduct of Daniel in allowing the Morgan employees to work without fall protection in violation of the safety regulations occurred after Daniel was hired by Conoco."[86] Again, the court focused on whether there was evidence demonstrating Conoco knew, at the time it hired Daniel Construction Company, that Daniel Construction Company was irresponsible.

The Plaintiffs have sufficiently alleged a claim that Bulk Inc. negligently selected or hired their employer, DTCS, to operate the port facility as an independent contractor. The Plaintiffs allege that Bulk Inc. knew of DTCS' numerous OSHA violations.[87] The Stack Plaintiffs further allege that "Dating back to 2012, DEDICATED repeatedly has been cited for violations of the OSHA regulations set forth in 29 CFR 1910.146 pertaining to requirements for practices and procedures to protect employees from the hazards of entry into permit-required confined spaces, including railcars."[88] In addition, the Stack Plaintiffs allege that seven of the ten "citations issued to DEDICATED for OSHA violations pertained to confined-space violations."[89] Further, it is clear that Bulk Inc's alleged knowledge of DTCS' numerous OSHA violations is not a conclusory allegation; Bulk Inc. is a member of Dedicated TCS, LLC.[90] The Plaintiffs have sufficiently alleged a tort claim under the theory that Bulk Inc. was negligent in contracting with or hiring DTCS.

---

[86] *Id.* at 1224-25.
[87] R. Doc. 61 at 3; R. Doc. 81 at 5; Case No. 17-47 R. Doc. 1-8 at 6.
[88] R. Doc. 81 at 6-7. The Hernandez Plaintiffs also allege that DTCS received, and ignored, numerous reprimands by OSHA for violating requirements to test air quality and provide life lines to its employees. R. Doc. 32 at 1-2.
[89] R. Doc. 81 at 6-7.
[90] *See* R. Doc. 96 at 13.

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that the Motions to Dismiss filed by Defendants Bulk Inc. and Bulk Louisiana[91] are **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that the Motions to Dismiss the causes of action based on an assumption of a duty and premises liability[92] are **GRANTED.** The Plaintiffs' causes of action based on an assumption of a duty and premises liability are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Motions to Dismiss the causes of action based on Bulk Inc.'s negligent hiring or contracting with DTCS[93] are **DENIED.**

**IT IS FURTHER ORDERED** that the Motion to Dismiss the Hernandez Plaintiffs' claims against Bulk Louisiana[94] is **GRANTED.** The Hernandez Plaintiffs' claims against Bulk Louisiana are **DISMISSED WITH PREJUDICE.**

**New Orleans, Louisiana, this 5th day of July, 2017.**

*[signature: Susie Morgan]*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[91] R. Docs. 87, 93.
[92] R. Docs. 87, 93.
[93] R. Docs. 87, 93.
[94] R. Doc. 87.