# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOENDEL HERNANDEZ, ET AL.**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-3621** |
| **DEDICATED TCS, L.L.C., ET AL.**<br>    **Defendants** | **SECTION: "E"(5)** |

## ORDER AND REASONS

Before the Court is Defendant Dedicated TCS, LLC's ("DTCS") Rule 12(b)(6) Motion to Dismiss the amended complaint filed by Demond Stack, Armond Burnett, Iesha Burnett, Pamela Burnett, Nakita Stack, and Shenita Stack, individually and on behalf of the Estate of Armond Stack ("Stack Plaintiffs").[1] The Stack Plaintiffs oppose this motion.[2] For the following reasons, DTCS' motion to dismiss is **GRANTED**.

## BACKGROUND

On October 6, 2016, the Stack Plaintiffs filed their initial complaint against DTCS, RST Insurance Company, Bulk Louisiana, UVW Insurance Company, Arkema, Inc. and XYZ Insurance Company in the Civil District Court for the Parish of Orleans, State of Louisiana.[3] DTCS filed a notice of removal in this district.[4] On April 4, 2017, the Court granted DTCS' *ex parte* motion to consolidate Stack Plaintiffs' action with *Hernandez v. Dedicated TCS, LLC*.[5] On April 11, 2017, the Stack Plaintiffs filed their First Supplemental and Amended Complaint.[6]

---

[1] R. Doc. 94.
[2] R. Doc. 95.
[3] Case No. 17-cv-46, R. Doc. 1.
[4] *Id.*
[5] R. Doc. 72.
[6] R. Doc. 81.

1

The consolidated actions arise out of an incident occurring on or about October 8, 2015. On that date, Joendel Hernandez, Anthony Duckworth and Armond Stack, employees of DTCS, were assigned to clean an Arkema tank car at the facility operated by DTCS at the Port of New Orleans. Plaintiffs allege that, although the tank car to be cleaned contained hazardous and toxic chemical vapors, they were ordered to enter the tank car without the protective equipment needed to ensure their ability to breathe. The complaints allege that Joendel Hernandez, Anthony Duckworth and Armond Stack immediately lost consciousness, and that Armond Stack eventually lost his life, as a direct result of their exposure to hazardous vapors and their lack of oxygen in the tank car. The Stack Plaintiffs specifically allege that the Occupational Safety and Health Administration conducted an exhaustive investigation of the incident and concluded that the incident was caused by the intentional acts of DTCS.[7] The Stack Plaintiffs allege that as a result of the incident, Armond Stack lost his life and that the cause of death was identified as asphyxia due to an oxygen deficient environment.[8]

On March 3, 2017, the Court issued its Order and Reasons granting Defendant DTCS' Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the claims brought against it by Joendel Hernandez and Anthony Duckworth ("Hernandez Plaintiffs") after finding that the Hernandez Plaintiffs' claims against DTCS were barred by the Louisiana Workers' Compensation Act ("LWCA").[9]

On May 30, 2017, Defendant DTCS filed a similar motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure arguing that the Stack Plaintiffs'

---

[7] Case No. 17-cv-46, R. Doc. 1-8 at 4.
[8] *Id.* at 3-4.
[9] R. Doc. 58.

claims against it are also barred by the LWCA.[10] On June 6, 2017, the Stack Plaintiffs filed their opposition to DTCS' motion to dismiss.[11]

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[12] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[13] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[15] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[16]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[17] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

---

[10] R. Doc. 94.
[11] R. Doc. 95.
[12] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[14] *Id.*
[15] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[16] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[17] *Twombly*, 550 U.S. at 555.

3

show[n]'—that the pleader is entitled to relief."[18] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[19]

## LAW AND ANALYSIS

I. <u>Plaintiffs Have Not Alleged a Claim Under The Intentional Act Exception to the LWCA</u>

Under Louisiana law, the exclusive remedy for an employee who is injured while in the course and scope of his employment is the LWCA, unless the employee can prove that the injury is the result of the employer's "intentional act."[20] The Louisiana Supreme Court has held that "intentional act" in this context means "intentional tort."[21] As the Louisiana Supreme Court explained in *Bazely*, "The meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed that they were substantially certain to follow from what he did."[22] Stated differently, "Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result."[23]

The Stack Plaintiffs argue the Court's reasoning in its March 3, 2017 Order and Reasons does not apply equally to their complaint because they, unlike the Hernandez Plaintiffs, have asserted facts demonstrating DTCS knew that the incident at issue was substantially certain to follow from its conduct because DTCS had engaged in a pattern of violating the same safety regulations and practices which led to Armond Stack's death.[24] The Stack Plaintiffs allege that DTCS (1) failed to ensure that its employees were provided

---

[18] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).
[19] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).
[20] *See* La. Rev. Stat. §§ 23:1032(A), (B) (1990).
[21] *Bazely v. Tortorich*, 397 So. 2d. 475, 482 (La. 1981).
[22] *Bazely*, 397 So. 2d at 482.
[23] *Id.* (citations omitted).
[24] R. Doc. 95 at 4.

4

respiratory protection equipment necessary to protect the health of each employee; (2) failed to ensure that employees received a medical evaluation prior to implementing respiratory protection for employees; (3) failed to ensure that employees had received a fit test prior to initial respirator use; (4) failed to implement a written confined permit space entry program; (5) failed to evaluate permit space conditions when entry operations were conducted by testing conditions in the permit space to determine if acceptable entry conditions existed before entry was authorized to begin; (6) failed to ensure that the prospective rescue service was able to respond to the facility in a timely manner; (7) failed to ensure that the prospective rescue service had been evaluated to determine their ability to provide rescue from permit spaces maintained on site; (8) failed to prepare an entry permit prior to an employee entering the railcar; (9) failed to ensure that an entry supervisor verified the entry permit for a railcar before entry was allowed; and (10) allowed employees to enter a permit space within a rail car without ensuring that they were attached to a retrieval device or fixed point outside the railcar.[25] The Stack Plaintiffs also allege that DTCS:

> [I]ntentionally caused injuries to plaintiff, Armond Stack, by engaging in a deliberate pattern of conduct wherein, based upon a long history of prior similar incidents for which [DTCS] had been cited by investigating authorities, and as a result of this prior history, [DTCS] knew that the resulting injuries to its employee was substantially certain to follow from its conduct in this matter[.][26]

Specifically, the Stack Plaintiffs allege that DTCS' was aware, based on violations of the pertinent OSHA requirements, "that the subject incident was substantially certain to follow from its conduct."[27]

---

[25] Case No. 17-cv-46, R. Doc. 1-8 at 4.
[26] R. Doc. 81 at 6.
[27] *Id.* at 16.

5

The Court finds that, even accepting the allegations in the Stack Plaintiffs' Complaint and Supplemental and Amending Complaint as true, the Stack Plaintiffs have not sufficiently alleged a viable cause of action against DTCS under the intentional act exception to the LWCA.

"The standard for prevailing on a claim of intentional tort under Louisiana law is extremely high."[28] As the Louisiana Supreme Court explained in *Reeves v. Structural Preservation Systems*, Louisiana courts of appeal have "narrowly construed the intentional act exception according to its legislative intent and have almost universally held that employers are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment."[29] As explained in *Reeves*, "Believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation."[30]

Establishing that a workplace injury resulted from an intentional act under the LWCA requires evidence that the employer either (1) consciously desired the physical result of his act, whatever the likelihood of that result happening from his conduct, or (2) knew that result was substantially certain to follow from his conduct, whatever his desire may have been as to the result.[31] Louisiana courts have explained that "[t]he phrase substantially certain to follow means more than a reasonable probability that an injury will occur."[32] Other Louisiana courts have interpreted that "substantial certainty" is the

---

[28] *Roux v. Pinnacle Polymers, L.L.C.*, 2014 WL 129815, at *3 (E.D. La. Jan. 14, 2014).
[29] 731 So. 2d 208, 211-12 (La. 1999) (collecting cases).
[30] *Id.* at 212.
[31] *See Moreau v. Moreau's Material Yard, L.L.C.*, 98 So. 3d 297 (La. 2012).
[32] *See Gardner v. Graft*, 137 So. 3d 69, 75 (La.App. 2 Cir.2014) (internal quotations and citations omitted).

"equivalent to inevitable, virtually sure and incapable of failing."[33] As the court in *Gardner* explained:

> Believing that someone may, or even probably will eventually get hurt if workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation. Neither knowledge and appreciation of a risk nor reckless or wanton conduct by an employer constitutes an intentional wrongdoing. Further, even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering a claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the actual intention to injure that robs the injury of accidental character.[34]

The Stack Plaintiffs do not allege that DTCS consciously desired that Armond Stack sustain his injuries. Instead they argue DTCS knew that the injuries were substantially certain to follow from its conduct. The Stack Plaintiffs argue that over the course of three years preceding this incident, DTCS and its managers were repeatedly reprimanded and fined by OSHA for the very same confined-space entry violations that were violated here and led to Armond Stack's death.[35] The Stack Plaintiffs argue these continued violations "all suggest that [DTCS] knew that the likelihood of injury was at the level of inevitability required to establish an intentional tort."[36] Although the Stack Plaintiffs do allege that DTCS "knew that the subject incident was substantially certain to follow from its conduct," the court finds that this allegation is insufficient for the Court to draw the reasonable inference that Armond Stack's death was inevitable, virtually sure, and incapable of failing to occur as a result of DTCS' actions or actions.

---

[33] *Roux*, 2014 WL 129815, at *3 (quoting *King v. Schulykill Metals Corp.*, 581 So. 2d 300, 302 (La.App. 1st Cir.1991)).
[34] *Gardner*, 137 So. 3d at 75 (citations omitted).
[35] R. Doc. 95 at 7.
[36] *Id.* at 8.

Even accepting the allegations in their complaint as true, the Court finds the Stack Plaintiffs have not sufficiently alleged a claim that falls under the intentional tort exception to the LWCA. Instead, the Stack Plaintiff's complaint and amended complaint include allegations of the kind Louisiana courts have found to be insufficient to establish intentional tort liability under the LWCA. DTCS' 12(b)(6) motion to dismiss for failure to state a claim under the intentional act exception to the LWCA is granted.

## CONCLUSION

For the abovementioned reasons, **IT IS ORDERED** that Defendant Dedicated TCS, LLC's Rule 12(b)(6) Motion to Dismiss[37] is **GRANTED**. The Stack Plaintiffs' claims against Defendant Dedicated TCS, LLC are **DISMISSED WITH PREJUDICE**.

**New Orleans, Louisiana, this 5th day of July, 2017.**

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[37] R. Doc. 94.